**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Dominick MUSELLA, et al., Defendants.**

**No. 83 Civ. 342 (CSH).**

United States District Court, S.D. New York.

Jan. 4, 1988.

Steven M. Rosenberg, Washington, D.C., Anne Flannery, New York City, for plaintiff.

Harvey A. Levine, P.C., New York City, for defendants Edward O'Neill and Richard B. Martin.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Securities and Exchange Commission ("SEC") moves under Rule 56, F.R. Civ.P., for summary judgment for certain relief demanded in its third amended complaint against defendants Edward O'Neill and Richard B. Martin. Those defendants cross-move on the briefs for summary judgment dismissing the complaint as to them.

### I.

This is an "insider trading" case. The SEC sues defendants O'Neill and Martin, together with other individuals, for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 17 C.F.R. 240.10b–5, promulgated thereunder.

The primary "tipper" was one Alan Ihne, formerly manager of the office services department of the law firm of Sullivan & Cromwell. Pertinent background for the present motions may be derived from this Court's prior opinion, 578 F.Supp 425 (S.D. N.Y.1984), familiarity with which is assumed.

The SEC supports its motion against these defendants with a statement of material undisputed facts under local Civil Rule 3(g); guilty pleas of other individuals offered to Judge Brieant (as he then was) in *United States v. Ihne et al.*, S 84 Cr. 686;

affidavits of Sullivan & Cromwell representatives; and the depositions of O'Neill and Martin. O'Neill and Martin offer no separate Rule 3(g) statement of triable material facts. They do submit their own affidavits, whose primary thrust is to challenge the interpretations the SEC places upon their deposition testimony. In these circumstances I deem the SEC's Rule 3(g) statement of facts admitted, except to the extent that it relies upon interpretations of defendants' depositions which defendants challenge in their answering affidavits. *See* Rule 3(g), last paragraph.

### II.

Briefly stated, Ihne misappropriated confidential information about corporate mergers and acquisitions involving Sullivan & Cromwell clients. He tipped that information to a friend, Palomba, and Palomba's stockbroker, Stivaletti. Stivaletti enlisted Dominick Musella, the brother of his client Michael Musella. These four traded profitably on insider information furnished by Ihne during 1981 and 1982.

Stivaletti also acted as a broker for O'Neill, Martin and John Musella, brother of Dominick and Michael. But none of these three used Stivaletti "in connection with any of the trades at issue in this case." *SEC v. Musella, supra* at 433.

In 1981 O'Neill, Martin and John Musella were New York City police officers and friends. Each traded in the stock market. In June 1981 John Musella recommended that O'Neill purchase Texasgulf securities. O'Neill and Martin purchased call options in that company on June 16. A tender offer for Texasgulf was announced on June 26. Ihne, Palomba and Stivaletti had traded to their profit on that offer, using a tip from Ihne.

After the Texasgulf tender offer was publicly announced, O'Neill asked John Musella if he expected to get any more information. Musella told O'Neill that he did. During subsequent months, O'Neill and Martin conducted trades on the basis, in part at least, of Musella's recommendations. They also allowed Musella to make purchases on margin through the Nassau

Investment Club, which O'Neill and Martin had formed. When John Musella told O'Neill that his brother Dominick was profiting on his trades but wanted a new broker, O'Neill recommended his own broker, Roger Rowe of the Mosely Hallgarten brokerage. O'Neill asked Rowe to advise him of any trades Dominick contemplated and made. Rowe agreed to do this.

During the period embraced by this action, O'Neill and Martin traded in shares or options of a number of companies. They included Penn Central; Marathon Oil Co.; Signode Corp.; and Limited Stores, Inc. They also permitted John Musella to make purchases in some of these securities through the Nassau Investment Club account. All four named corporations were involved in acquisitions where Sullivan & Cromwell represented one side or the other. Ihne was giving inside information about them to his tippees.

On the present record, the SEC now seeks summary granting it a permanent injunction against O'Neill and Martin in respect of securities fraud. The SEC also seeks disgorgement of profits these defendants made from trading in the securities of Signode and Limited Stores. I infer from the SEC's brief that if such relief is granted, the SEC will be satisfied in respect of these defendants, although the complaint charges them with violations in other and earlier trades.

### III.

Certain aspects of the case are not disputed. The affidavits of Sullivan & Cromwell personnel establish that Ihne misappropriated confidential information belonging to the firm's clients and divulged that information to his tippees for the purpose of trading in the clients' shares. O'Neill and Martin do not challenge this assertions.

■ This conduct by Ihne and his tippees violates section 10(b) of the 1934 Act. Whatever the future may hold concerning the viability of or limitations upon the "misappropriation" theory following an equally divided Supreme Court's affirmance of *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), present appellate authority makes it clear that Ihne and his first-tier tippees violated the statute.

■ Counsel for O'Neill and Martin stress that these defendants did not know Ihne, Palomba or Dominick Musella. As for Stivaletti, defendants had severed connections with him before dealing in any of the securities at issue. I accept, therefore, the defense contention that there was no direct link with a first tier tippee.

But that circumstance, standing alone, is not sufficient to insulate O'Neill and Martin from a finding of scienter. Scienter in insider trading cases is not, and as a matter of public policy should not, be limited to those in direct contact with the primary tipper. Rather, the issue is whether a tippee, wherever he stood in a chain of tippees, "either knew or should have known that he was trading on improperly obtained non-public information." *SEC v. Musella, supra* at 442.

■ On that aspect of the case, O'Neill and Martin face certain difficulties. O'Neill acknowledged at his deposition (and Martin, who worked closely with him, does not dispute) that both defendants believed John Musella's recommendations were based upon confidential non-public information. O'Neill and Martin based that impression upon Musella's· recommendations concerning Texasgulf and Marathon Oil, shortly followed by public announcements of both tender offers. Thus in describing his conversations with Martin in November 1981, O'Neill testified:

"Combining the trades in Texasgulf and Marathon and John's [Musella] position or overall relationship to us in those trades, that, at that time, we felt that he could be receiving inside information." Tr. 319.

Both O'Neill and Martin made a conscious and deliberate choice not to ask John Musella any questions about the confidential source whose existence they suspected.

Building upon O'Neill's affidavit in opposition, defendants' counsel denies the existence of insider knowledge other than a "gut or visceral" reaction. Brief at 2. But

I conclude that these defendants' awareness rose to a higher level than that. I base that conclusion not only on O'Neill's deposition testimony, but on inferences I draw from other circumstantial evidence, which may be considered on the scienter issue. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n. 30, 103 S.Ct. 683, 692 n. 30, 74 L.Ed.2d 548 (1983).

■ Thus O'Neill's protestations that he made some of these trades primarily upon Rowe's advice are undermined by the fact that, at the same time, O'Neill and Martin were setting up individual and club accounts with other brokers. These defendants were not trading in particularly high volumes; this proliferation of brokers suggests an effort to spread insider trading among a number of accounts, thereby avoiding detection. O'Neill's earlier instructions to Rowe to be kept advised of Dominick Musella's trading, coupled with these defendants permitting John Musella to trade through their accounts and insistence that John Musella pay them in cash in amounts less than $10,000 to avoid bank reporting regulations, all combine to support the inference that defendants were aware they had tapped into a pipeline of non-public information, did not wish to interrupt the flow, and did not want their source to become known.

■ Whether O'Neill and Martin knew or should have known that the insider source had breached a fiduciary duty poses a closer question. The SEC finds support in footnote 22 in *Eichler v. Berner*, 472 U.S. 299, 105 S.Ct. 2622, 2630 n. 22, 86 L.Ed.2d 215 (1985); but an arguably cautionary note is struck by footnote 21, *id.* 105 S.Ct. at 2629 n. 21 which reads in part:

"A tippee generally has a duty to disclose or to abstain from trading on material nonpublic information only when he knows or should know that his insider source 'has breached his fiduciary duty to the shareholders by disclosing the information'—in other words where the insider has sought to 'benefit, directly or indirectly, from his disclosure.' *Dirks v. SEC*, 463 U.S. 646, 660, 662, 103 S.Ct. 3255, 3264, 3265, 77 L.Ed.2d 911 (1983)."

In the case at bar, the SEC does not suggest that John Musella, defendants' fellow police officer, breached a fiduciary to anyone. Nevertheless, I conclude that the direct and circumstantial evidence in the case require the inference that, at the very least, O'Neill and Martin should have known that fiduciary duties were being breached with respect to confidential, nonpublic information.

O'Neill and Martin were both experienced stock market investors. During his deposition, O'Neill spoke in knowledgeable terms of the mysteries of option trading, market strategy and the like. It is clear that Martin shared his level of sophistication. O'Neill and Martin were aware of the ban against insider trading. They made a deliberate decision not to ask John Musella about the confidential sources they were quite certain Musella had. There is no reason to expect that if these defendants had asked their brother officer where his tips were coming from, they would not have been told. What happened is clear enough: Dominick Musella, a first-tier tippee, was spreading the benefits among his family. O'Neill and Martin did not ask because they did not want to know. I cannot accept that conscious avoidance of knowledge defeats scienter in a stock fraud, case any more than it does in the typical *mens rea* criminal context. To hold otherwise would subvert the laws against fraudulent trading in securities. I apply to these defendants the same scienter analysis as I did to another defendant, Daniel Covello, in *SEC v. Musella, supra*, at 442. To be sure, that decision directed a preliminary injunction. Here the SEC prays for a permanent injunction and disgorgement. But the depositions of O'Neill and Martin, the documents which they produced, and the other evidentiary material presented on this motion constitute a full record.

The SEC's burden is to show improper use of confidential non-public information in connection with the purchase or sale of securities, and scienter on the part of these particular defendants. The burden of proof is that of preponderance of the evidence. *Herman & MacLean v. Huddle-*

*ston, supra,* 459 U.S at 390, 103 S.Ct. at 691. The SEC has demonstrated that no material issues of fact requiring trial exist with respect to these issues. Summary judgment is appropriate in these circumstances. Orders of permanent injunction against these two experienced, sophisticated traders are necessary. Disgorgement of their Signode and Limited Stores profits is required by established authority.

### Conclusion

The SEC's motion for summary judgment is granted. Defendants' cross-motion is denied.

Counsel for the SEC are directed to settle a judgment consistent with this Opinion on ten (10) days notice.