## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Adrian A. ALEXANDER formerly known as "Adrian Antoniu," Susi Belli, David V. Stratman, Patrick J. Rooney, Constantine Spyropoulos, Jacobus J. Lam, John R. Rooney, Patrick G. Rooney, Pavel Hillel, Westcliff Partners, Inc., Potenza Investments, Inc., Quintillion B.V., Rooney Trading, Inc. and Gianna Toffoli, Defendants,

Penelope Afouxenide, Relief Defendant.

No. 00CIV.7290(LTS)(HBP).

United States District Court, S.D. New York.

Aug. 14, 2001.

---

Charles D. Stodghill, John B. Bulgozy, Ashley C. Wall, Securities and Exchange Commission, Washington, D.C., for plaintiff Securities and Exchange Commission.

Stephen A. Dvorkin, Dickstein Shapiro Morin & Oshinsky LLP, New York City, for defendants Patrick G. Rooney and Rooney Trading.

Sheryl E. Reich, Gerald B. Lefcourt, P.C., New York City, for defendants David Stratman and Pavel Hillel.

William C. Rand, Kevin C. Logue, Paul, Hastings, Janofsky & Walker LLP, New York City, for defendant John R. Rooney.

Lawrence M. Rolnick, A. Matthew Boxer, Lowenstein Sandler PC, New York City, for defendants Adrian A. Alexander and Susi Belli.

Robert Kaplan, Robert Loigman, Friedman Kaplan Seiler & Adelman LLP, New York City, for defendant Gianna Toffoli.

## OPINION AND ORDER

SWAIN, District Judge.

This civil case, in which the Securities and Exchange Commission ("SEC") alleges insider trading, is before the Court on the motions of defendants Adrian Alexander, Susi Belli, David V. Stratman, Pavel Hillel, John R. Rooney, Patrick G. Rooney, Rooney Trading, Inc. and Gianna Toffoli to dismiss the complaint ("Complaint") on the grounds that it fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendant Gianna Toffoli also seeks dismissal for lack of personal jurisdiction and on forum non conveniens grounds. Defendants David Stratman, Pavel Hillel and John R. Rooney move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Complaint alleges that defendants violated section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") (15 U.S.C.A. § 78j(b) (West 1997 & Supp. 2000)), and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5 (2001)) and that defendants, excepting Gianna Toffoli, violated section 14(e) of the Exchange Act (15 U.S.C.A. § 78n(e) (West 1997 & Supp. 2000)) and Rule 14e–3 promulgated thereunder (17 C.F.R. § 240.14e–3 (2001)). The SEC also seeks a permanent injunction against defendants, disgorgement of illegal trading profits, and civil penalties under the Insider Trading and Securities Fraud Enforcement Act of 1988, 15 U.S.C.A. § 78u–1 (West 1997 & Supp.2000). For the following reasons, the motions of defendants Adrian Alexander, Susi Belli, David V. Stratman, Pavel Hillel, John R. Rooney, Patrick G. Rooney and Rooney Trading, Inc., are denied and defendant Gianna Toffoli's motion to dismiss is granted insofar as it is based on lack of personal jurisdiction.

### FACTS

The following facts are alleged in the Complaint.[1] Luxottica Group S.p.A. ("Luxottica") is an Italian company that designs and sells eyewear. Luxottica's American Depository Receipts ("ADRs")

---

1. A challenge under Rule 9(b) tests the sufficiency of pleadings as to fraud claims. Fed. R.Civ.P. 9(b). In determining a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take as true the allegations of the complaint. *See infra* p. 648.

are registered pursuant to Section 12(b) of the Exchange Act and are traded on the New York Stock Exchange. Complaint, ¶ 22. In 1994, Luxottica began considering acquiring a retail eyeglass operation in the United States. *Id.,* ¶ 23. In October 1994, Luxottica's board of directors authorized exploration of a transaction involving U.S. Shoe Corporation ("U.S.Shoe"), one of whose subsidiaries was LensCrafters, an eyewear retailer. *Id.,* ¶¶ 23, 26. In November 1994, Susi Belli, Luxottica's Manager of Public and Investor Relations, was informed of Luxottica's confidential plans concerning the acquisition of U.S. Shoe. Thereafter, Susi Belli was involved continuously in Luxottica's preparations to commence a tender offer for U.S. Shoe. *Id.,* ¶¶ 27–31.

A the time of the events alleged in the Complaint, the defendants had close relations with each other. Alexander was then Susi Belli's boyfriend and is now her husband. *Id.,* ¶¶ 1, 8. Gianna Toffoli is Susi Belli's mother. *Id.* ¶¶ 1, 15. David Stratman was Alexander's attorney and Pavel Hillel was Stratman's friend. *Id.* ¶¶ 2, 14, 16. Alexander, Patrick J. Rooney, John R. Rooney and Jacobus Lam were each associated with Alexander's business, EC/American Securities, Corp.. *Id.,* ¶¶ 8, 9, 11, 38. Patrick J. Rooney is the father of Patrick G. Rooney and John R. Rooney. *Id.,* ¶¶ 12, 43, 44.

In December 1994, Susi Belli and Adrian Alexander were in constant communication, including telephone calls on December 12, 13, and 14, 1994. *Id.,* ¶ 32. On December 14, 1994, Alexander communicated with David Stratman several times and, on December 15, 1994, Stratman made his first purchase of U.S. Shoe securities. *Id.,* ¶ 33. On December 16, 1994, Alexander made several telephone calls to Susi Belli at her office at Luxottica in Italy. Also on December 16, 1994, a call

was made from Alexander's office to Stratman and on that same day Stratman purchased additional shares of U.S. Shoe. *Id.,* ¶ 34. On December 16 and 17, 1994, David Stratman called Pavel Hillel and tipped him information about the proposed acquisition of U.S. Shoe. On Monday, December 19, 1994, Hillel placed an order for his first option trade and first trade in U.S. Shoe securities by purchasing 10 April 15 call options. *Id.,* ¶ 35.

On December 22, 1994, after a series of calls to Susi Belli made the previous day, several more calls were made from Alexander's office to Stratman. On December 23, 1994, Stratman purchased 15 additional April 20 U.S. Shoe call options. *Id.,* ¶ 36. By December 30, 1994, the price of U.S. Shoe shares had risen 13% from their December 15, 1994 price. On December 30, 1994, Stratman sold the 6,000 shares he had purchased. *Id.,* ¶ 37.

On or about December 20, 1994, Alexander informed Patrick J. Rooney, and both informed Jacobus Lam, about the impending tender offer for U.S. Shoe. *Id.,* ¶ 39. Patrick J. Rooney purchased 1,000 April 20 U.S. Shoe call options on or about December 20, 1994 through defendant Quintillion, B.V., a company controlled by Jacobus Lam. *Id.,* ¶¶ 39–41.

In December 1994, John R. Rooney tipped his brother Patrick G. Rooney about Luxottica's interest in U.S. Shoe. *Id.,* ¶ 43. Patrick J. Rooney also tipped information about Luxottica's tender offer plans to Patrick G. Rooney and, on January 6, 1995, Patrick G. Rooney made his first investment in U.S. Shoe by purchasing 30 April 20 call options through an account at Rooney Trading. *Id.,* ¶¶ 44–45.

In January 1995, Belli attended meetings with Luxottica's U.S. based financial advisors and outside public relations advisors and participated in due diligence meetings in connection with the anticipated ten-

der offer. *Id.,* ¶¶ 46, 48. On January 31, 1995, Luxottica's board of directors authorized a tender offer for U.S. Shoe. *Id.,* ¶ 50.

On or before January 30, 1995, Belli tipped her mother, Gianna Toffoli, with information about Luxottica's plans concerning U.S. Shoe. *Id.,* ¶ 51. On January 30, 1995, Toffoli placed a limit order to sell 6,000 Luxottica ADRs. On February 3, 1995, when the limit order had not been executed, Toffoli changed the limit order; the sale of her Luxottica ADRs on the New York Stock Exchange was executed on February 3, 6, and 7, 1995. *Id.,* ¶ 52.

On February 13, 1995, Luxottica received a preliminary financing commitment from its financial advisor. *Id.,* ¶ 53. Belli was in New York on February 13, 1995, and was in contact with Luxottica headquarters concerning the tender offer and with Alexander, whom she contacted on February 13 and 14, 1995. *Id.,* ¶¶ 54–55.

On February 15, 1995, Stratman sold his April 20 U.S. Shoe call options. The same day and the following day, Alexander called Stratman and provided him with further information concerning the tender offer. *Id.,* ¶ 57. On February 17, 1995, Stratman placed orders to purchase U.S. Shoe stocks and options, including an order to purchase 20,000 shares of U.S. Shoe on margin, substantially exhausting his margin credit. *Id.,* ¶ 58.

From February 15 through February 20, 1995, Alexander, Patrick J. Rooney and John Rooney engaged in a series of communications during which Alexander allegedly tipped additional information concerning the tender offer. *Id.,* ¶ 60.

On February 17, 1995, Nine West and U.S. Shoe announced that prior discussions to sell U.S. Shoes's women's footwear business to another company, Nine West, had terminated. Thereafter, the price of U.S. Shoe stock dropped 15%. *Id.,* ¶ 61.

On February 17 and 18, 1995, John R. Rooney, Alexander and Patrick J. Rooney engaged in a series of communications; John R. Rooney also placed several calls to Patrick G. Rooney tipping additional information concerning the tender offer. *Id.,* ¶ 63. On February 22, 1995, Patrick G. Rooney purchased 200 more April 20 U.S. Shoe call options. *Id.,* ¶ 64.

On February 22, 1995, following the termination of the Nine West talks with U.S. Shoe and the resulting drop in U.S. Shoe's share price, Stratman sold his margin position to provide funds to settle his February 17, 1995 transaction. *Id.,* ¶ 65.

On March 3, 1995, Luxottica announced a tender offer for all of U.S. Shoe's stock. *Id.,* ¶ 67. After the announcement, the price of U.S. Shoe shares rose, for an approximate one-day increase of 35%. The price of Luxottica shares fell, for a one-day decline of approximately 20%. *Id.*

Gianna Toffoli sold her Luxottica shares prior to the tender offer announcement, avoiding a loss of $20,250. *Id.,* ¶ 68. Patrick G. Rooney sold his position in U.S. Shoe on the day of the tender announcement. *Id.,* ¶ 69. On March 3, 6, and 7, and 27, 1995, U.S. Shoe call options were sold from brokerage accounts. The proceeds of those sales were ultimately shared with Alexander and Patrick J. Rooney. *Id.,* ¶¶ 71, 73. On April 5, 1995, Stratman sold his remaining U.S. Shoe interests. *Id.,* ¶ 74. On April 12, 1995, Hillel sold his U.S. Shoe call options. *Id.,* ¶ 75.

## DISCUSSION

When determining a motion to dismiss, "complaints should be read generously, and all inferences should be drawn in favor of the pleader." *Cosmas v. Hassett,* 886 F.2d 8, 12 (2d Cir.1989) (citing *Yoder v.*

*Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985)). Moreover, "[t]he district court should deny the motion [to dismiss] unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *IUE AFL—CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052–53 (2d Cir.1993). This general rule applies when fraud is pleaded. *Id.; Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990) ("[w]hen fraud is asserted, the general rule is simply applied in light of Rule 9(b)'s particularity requirements.").[2]

*Rule 9(b) and the Scienter Requirement*

■ Rule 9(b) of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). The purpose of Rule 9(b) is, in part, is to provide fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. *Cosmas v. Hassett*, 886 F.2d at 11; *see also S.E.C. v. Naegeli*, No. 92 Civ. 4583, 1993 WL 15126, at *3 (S.D.N.Y. Jan. 12, 1993) (motion denied where complaint provided enough information to allow defendant to prepare defense).

■ A complaint alleging fraudulent violations of section 10(b) and Rule 10b–5 must satisfy the particularity requirement of Rule 9(b). *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982). Although Rule 9(b) provides that

"[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," it is well established that a plaintiff must still "allege facts that give rise to a *strong inference of fraudulent intent*." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996) (emphasis in original) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995)).

■ In cases involving material omissions or misstatements, in order to state a claim with the requisite particularity a complaint "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito*, 47 F.3d at 51 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). In cases involving insider trading, however, where the specific facts are "peculiarly within the knowledge of defendants," the application of Rule 9(b) is "relaxed" to allow circumstantial evidence to plead the specific content and circumstances of insider tips. *Energy Factors, Inc. v. Nuevo Energy Co.*, No. 91 Civ. 4273, 1991 WL 259425, at *4 (S.D.N.Y. Nov. 22, 1991) ("to require the plaintiff to produce more concrete evidence of these details would put a heavy burden on plaintiff and would practically preclude the possibility of pleading an adequate complaint in cases, such as insider trading, that are profoundly secretive in nature") (citations omitted). Such allegations, however, must be accompanied by factual allegations that provide substantiation and make them plausible; mere "boilerplate and conclusory allegations will not suffice." *In re Burlington Coat Facto-*

---

2. Insofar as John R. Rooney Pavel Hillel and David Stratman seek dismissal of the Complaint under Fed.R.Civ.P. 12(b)(6), their arguments are based on Complaint's alleged deficiencies under Fed.R.Civ.P. 9(b). Ac-

cordingly, the Court's discussion concerning the sufficiency of the Complaint under Rule 9(b) addresses their Rule 12(b)(6) argument as well.

*ry Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997) (citing *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 285 (3d Cir.1992)); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984) (court found that "while [complaint] does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation").

*Exchange Act Section 10(b) and Rule 10b–5*

Section 10(b) of the Exchange Act prohibits the use of any manipulative or deceptive device or contrivance in connection with the purchase or sale of securities. 15 U.S.C.A. § 78j(b) (West 1997 & Supp. 2000).

■ Rule 10b–5 describes more specifically what constitutes a manipulative or deceptive device or contrivance:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase of any security.

17 C.F.R. § 240.10b–5 (2001). It is well established that section 10(b) and Rule 10b–5 may be invoked in the context of insider trading. *See Simon DeBartolo Group v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 168 (2d Cir.1999). Moreover, a person who is in possession of inside information and discloses that information to others can be held liable for violating section 10(b) and Rule 10b–5 as a "tipper" even if he or she did not trade on the inside information. *See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 237 (2d Cir.1974). "Trades by tippees are attributed to the tipper." *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 165 (2d Cir.1980).

■ To state a claim under section 10(b) and Rule 10b–5, the plaintiff also must allege that a defendant acted with sufficient scienter. *S.E.C. v. U.S. Envtl., Inc.,* 155 F.3d 107, 111 (2d Cir.1998). Speculation and conclusory allegations are insufficient; a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 84 (2d Cir.1999) (citations omitted).

■ The Second Circuit, however, has allowed "fairly tenuous inferences" of scienter to satisfy pleading requirements. *S.E.C. v. Drescher,* No. 99 Civ. 1418, 1999 WL 946864, at *3 (S.D.N.Y. Oct. 19, 1999). In the Second Circuit, a showing of recklessness gives rise to a strong inference of fraudulent intent and is sufficient to show scienter. *Id.; see also U.S. Envtl.,* 155 F.3d at 111; *Chill,* 101 F.3d at 269. Recklessness is "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care.'" *S.E.C. v. McNulty,* 137 F.3d 732, 741 (2d Cir.1998) (quoting *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 47 (2d Cir.1978), *cert. denied* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978) (internal quotations and citations omitted)).

■ Tippee liability for insider trading in violation of Section 10(b) is established if a plaintiff shows that the tipper possessed material nonpublic informa-

tion concerning a publicly traded company, that the tipper disclosed this information to the tippee, that the tippee traded in the company's securities while in possession of the nonpublic material information provided by the tipper, that the tippee knew or should have known that the tipper had violated a relationship of trust by providing the nonpublic material information, and that the tippee benefitted by the disclosure of the information. *S.E.C. v. Warde*, 151 F.3d 42, 47 (2d Cir.1998) (setting forth basis of liability under the misappropriation theory and citing *Dirks v. S.E.C.*, 463 U.S. 646, 654–64, 103 S.Ct. 3255, 77 L.Ed.2d 911. (1983)). *See also S.E.C. v. Musella*, 678 F.Supp. 1060, 1062 (S.D.N.Y.1988) (the issue is whether the tippee "knew or should have known that he was trading on improperly obtained non-public information" (quoting *S.E.C. v. Musella*, 578 F.Supp. 425, 442 (S.D.N.Y. 1984))). "A tippee who knows or is reckless in not knowing that he was trading on misappropriated non-public information violates Rule 10b–5." *S.E.C. v. Musella*, 748 F.Supp. 1028, 1038 (S.D.N.Y.1984), *aff'd*, 898 F.2d 138 (2d Cir.1990). Scienter is often established by circumstantial evidence. *S.E.C. v. Sekhri*, No. 98 Civ. 2320, 1998 WL 259932 at *2 (S.D.N.Y. May 21, 1998) (citations omitted).

*Exchange Act Section 14(e) and Rule 14e–3*

 Section 14(e) prohibits "any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer ..." 15 U.S.C.A. § 78n(e). Rule 14e–3, enacted in 1980 pursuant to section 78n(e), prohibits trades based on material nonpublic information concerning a tender offer that a person knows or has reason to know has been acquired from an insider, either directly or indirectly. *See U.S. v. Chestman*, 947 F.2d 551, 557 (2d Cir.1991). The Rule further provides:

As a means reasonably designed to prevent fraudulent, deceptive or manipulative acts or practices within the meaning of section 14(e) of the Act, it shall be unlawful for any person described in paragraph (d)(2) of this section to communicate material, nonpublic information relating to a tender offer to any other person under circumstances in which it is reasonably foreseeable that such communication is likely to result in a violation of this section....

17 C.F.R. § 240.14e–3(d)(1) (2001). Persons described under paragraph (d)(2) of the rule include officers, directors, partners, employees or advisors of the entity engaging in a tender offer. *Id.*, § 240.14e–3(d)(2).

 A tippee is liable under Section 14(e) and Rule 14e–3 if the plaintiff establishes that the tippee traded "on the basis of material nonpublic information concerning a pending tender offer that he knows or has reason to know has been acquired directly or indirectly from an insider of the offeror or issuer, or someone working on their behalf." *United States v. O'Hagan*, 521 U.S. 642, 669, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997) (internal quotations and citations omitted). In order to plead scienter in the context of an insider trading case, it is not necessary to establish a direct link to the original tipper. *See Musella*, 678 F.Supp. at 1062. In deciding whether a complaint is sufficient under Rule 9(b) in a case alleging a section 14 violation, the question is whether the complaint alleges facts supporting a strong inference that a defendant had reason to know that the information upon which the defendant acted was inside information. *S.E.C. v. Cassano*, 61 F.Supp.2d at 33–34.

In this case, the SEC has stated a claim under section 10(b) and Rule 10b–5 and section 14(e) and Rule 14e–3 against defen-

dants Belli, Alexander, Hillel, Stratman, Patrick G. Rooney, Rooney Trading and John Rooney sufficiently to survive a motion to dismiss.

■ With respect to Susi Belli, the Complaint alleges that she, as a senior executive at Luxottica, possessed material nonpublic information regarding Luxottica's plans for a tender offer for U.S. Shoe and that she breached her fiduciary duty to Luxottica by misappropriating material nonpublic information concerning Luxottica's tender offer for U.S. Shoe when she provided this information to Alexander and to her mother, Toffoli. Further, the Complaint alleges that Belli knew or was reckless in not knowing that Alexander would tip others with the information concerning the tender offer. *Id.*, ¶¶ 32, 51, 76. The allegations concerning the timing of communications between the defendants in connection with the timing of Luxottica's steps towards the tender offer, and the subsequent pattern of purchases and sales of U.S. Shoe securities, are sufficient to support an inference of recklessness concerning Belli's knowledge that the information disclosed would likely lead improper trading on the part of the other defendants.

With respect to Alexander, the SEC has pled facts and circumstances giving rise to an inference that Alexander knew, should have known or was reckless in not knowing that the information he acquired about Luxottica's pending tender offer was inside information. The Complaint alleges that Belli and Alexander were in constant communication concerning the tender offer. The Complaint alleges facts drawing a connection between the times Belli and Alexander allegedly tipped material nonpublic information to other defendants and the dates of Luxottica's steps towards making the tender offer and dates of communications among Belli, Alexander and other defendants. *Id.,* ¶¶ 28–31; 46–49 (dates of Luxottica's actions towards the tender offer); *Id.,* ¶¶ 32–36; 39; 42–43; 44; 51; 54–57; 59–60; 63 (dates of defendants' alleged communications concerning the tender offer). These facts and circumstances give rise to a strong inference that Alexander knew, should have known, or was reckless in not knowing that the information concerning the impending tender offer was from a source that had breached a duty of confidentiality. *See S.E.C. v. Sekhri,* at *2 (complaint pled facts that defendant received phone calls from party who had received material nonpublic information from a fiduciary; such allegations were sufficient to infer that defendant knew that information came from an insider).

Similarly, with respect to David Stratman and Pavel Hillel, the Complaint alleges facts sufficient to support a strong inference that Stratman and Hillel knew, should have known, or were reckless in not knowing that the information provided to them by Alexander concerning the impending tender offer for U.S. Shoe came from a source that breached a duty of confidentiality. Because the SEC has alleged that the information concerning the proposed tender offer for U.S. Shoe was nonpublic, a reasonable inference arises that Stratman, a retired attorney and friend of Alexander, and Hillel, a friend of Stratman, knew or should have known that this information was inside information. Moreover, the timing of the alleged contacts among Alexander, Stratman and Hillel, and subsequent purchases of U.S. Shoe securities creates a strong inference that Stratman and Hillel were acting on inside information concerning the tender offer. The allegations in the Complaint, which asserts that Stratman and Hillel knew or should have known that Alexander's disclosures were derived from an insider, are sufficient to survive the motion to dismiss.

With respect to Patrick G. Rooney and Rooney Trading, Inc., the Complaint also alleges facts sufficient to support a strong inference that they knew, should have known or were reckless in not knowing that the information provided to them concerning the proposed tender offer was inside information. Given that the SEC has alleged that information regarding the proposed Luxottica tender offer was nonpublic, a reasonable inference arises that Patrick G. Rooney, a stockbroker, knew, should have known, or was reckless in not knowing that the information concerning the tender offer derived from a source that had breached a fiduciary duty. In addition, the allegations in the Complaint concerning the timing of the communications among John R. Rooney, Patrick J. Rooney and Patrick G. Rooney, together with the allegations concerning the timing of Patrick G. Rooney's purchase of U.S. Shoe securities, set forth circumstances sufficient to infer that Patrick G. Rooney and Rooney Trading knew that the information concerning the tender offer came from an inside source.

With respect to John R. Rooney, the Complaint alleges sufficiently facts which support a strong inference that he knew or should have known that the information provided to him concerning the proposed tender offer was inside information. As noted above, given that the SEC has alleged that the proposed tender offer was nonpublic, a reasonable inference arises that John R. Rooney, also a stockbroker, knew or should have known that the information came from a source that had breached a fiduciary duty. This inference, together with the allegations in the Complaint concerning the timing of the communications among John R. Rooney, Patrick J. Rooney and Patrick G. Rooney, together with the allegations concerning Patrick G. Rooney's purchase of U.S. Shoe securities,

suffice at this stage of the litigation to survive the motion to dismiss.

In addition to the above, the Complaint alleges a suspicious pattern, involving the aforementioned defendants, of purchases prior to the announcement of Luxottica's tender offer and sales promptly after the tender offer was announced:

- In December of 1994, Luxottica made significant steps towards that tender offer by, among other things, engaging CS/First Boston as financial advisor for the acquisition and contacting U.S. Shoe concerning the tender offer. Complaint, ¶¶ 30–31.

- Defendant Stratman purchased his first U.S. Shoe securities on December 15 and 16, 1994. *Id.*, ¶¶ 33–34. Stratman sold his shares on Dec 30, 1994, after the shares had increased in value by 16%. *Id.*, ¶ 37.

- Defendant Hillel made his first option trade and first trade in U.S. Shoe shares on December 19, and 23 1994. *Id.*, ¶ 35.

- Patrick J. Rooney contacted his broker and sought to purchase U.S. Shoe call options on or about December 20, 1994. *Id.*, ¶¶ 39–40.

- Patrick G. Rooney made his first investment in U.S. Shoe on January 6, 1995, purchasing call options. *Id.*, ¶ 45.

- On January 31, 1995, the Luxottica Board of Directors authorized a tender offer for U.S. Shoe. *Id.*, ¶ 50.

- On January 30, 1995, Toffoli placed a limit order on her Luxottica ADRs; the shares were sold by February 1995. *Id.*, ¶ 52.

- Stratman sold U.S. Shoe options on February 15, 1995 and then on February 17, 1995, purchased additional U.S. Shoe call options and 20,000 shares of U.S. Shoe on margin, exhausting his

credit margin. Stratman also used the entire value of his IRA to purchase U.S. Shoe shares. *Id.*, ¶¶ 58–60.

- On February 22, 1995, Patrick G. Rooney purchased additional shares of U.S. Shoe. *Id.*, ¶ 64.
- On February 17, 1995, Nine West and U.S. Shoe announced that a potential sale of U.S. Shoe's women's footwear business was not going forward and the share price of U.S. Shoe dropped 15% (*id.*, ¶ 61); Stratman sold the U.S. Shoe shares that he had purchased on margin. *Id.*, ¶ 65.
- On March 3, 1995, Luxottica announced the tender offer. *Id.*, ¶ 67.
- Patrick G. Rooney sold his entire position the next day. *Id.*, ¶ 69.
- On March 3–6, 1995, Luxottica shares in the defendant Quintillion brokerage account were sold. The proceeds ultimately made their way to Alexander and Patrick J. Rooney. *Id.*, ¶¶ 72–73.
- Stratman sold his remaining options on April 5, 1995. *Id.*, ¶ 74.
- Hillel sold his call options on April 12, 1995. *Id.*, ¶ 75.

The allegations concerning the timing of the contacts among the defendants, Luxottica's steps towards the tender offer and pattern of purchases and sales, along with the allegations concerning the close relationships among the defendants, constitute sufficient allegations of circumstantial evidence supporting the SEC's claim that the defendants had nonpublic information concerning the tender offer for U.S. Shoe and that they knew, should have known or were reckless in not knowing that the information provided concerning the tender offer for U.S. Shoe was inside information. *See S.E.C. v. Drescher,* 1999 WL 946864 (allegations that tipper and tippees were close friends plus allegations concerning statements about acquiring company and

targets determined to be sufficient circumstantial evidence to show that tipper was reckless in disclosing nonpublic information and reckless disregard of the fact that tippees were likely to trade based on the information). These allegations are sufficient to support the SEC's claim under section 10(b) and Rule 10b–5 and section 14(e) and Rule 14e–3, and the claim has been pled with sufficient particularity to survive the motion to dismiss.

■ The Court further finds that the Complaint provides the defendants fair notice of the substance of the SEC's claim in order for the defendants to prepare a responsive pleading, by setting forth the relationship of the defendants to Belli, allegations that inside information concerning the tender offer was passed from Belli to the other defendants, and allegations that defendants traded on that information for their benefit.

*John R. Rooney*

Defendant John R. Rooney moves to dismiss the SEC's claims under section 14(e) of the Exchange Act. John R. Rooney argues that the SEC has failed to allege that he that knew the alleged tender offer information was nonpublic or that it was acquired from an insider. As noted above, the Second Circuit allows "fairly tenuous" inferences of scienter to satisfy the pleading requirements of Rule 9(b). *S.E.C. v. Drescher,* at *3 (citations omitted). With respect to John R. Rooney, the Complaint asserts liability under section 14 for engaging in "fraudulent, deceptive or manipulative acts or practices in connection with a tender offer by Luxottica ... by communicating to others material, nonpublic information relating to Luxottica's tender offer, under circumstances in which it was reasonably foreseeable that such communications were likely to result in the purchase

or sale of the securities of U.S. Shoe." Complaint, ¶ 84.

The Complaint alleges that John R. Rooney and his father passed material non-public information to Patrick G. Rooney, who then made purchases of U.S. Shoe shares through Rooney Trading. As set forth above, the allegations concerning the timing the communications between John R. Rooney and the other defendants constitute sufficient pleading of scienter under the *Drescher* standard. *See S.E.C. v. Cassano*, 61 F.Supp.2d at 33–34.

*Claim for Injunctive Relief*

 Defendant John R. Rooney argues that the SEC has failed to state a claim for injunctive relief. Assuming all of plaintiff's claims to be true, a claim for injunctive relief is sustainable. Potential future violation of the securities laws can be inferred from alleged past violations. *See S.E.C. v. Naegeli*, 1993 WL 15126, at *3 (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975)). In alleging John Rooney violated the securities laws, the SEC has pled adequately a claim for injunctive relief.

*Personal Jurisdiction over Defendant Toffoli*

Defendant Toffoli seeks dismissal of the Complaint for lack of personal jurisdiction, arguing that the requisite minimum contacts with the United States cannot be established as to her. Toffoli, a resident of Italy, contends that her only relevant act was to sell shares of Luxottica, an Italian company, through her bank in Italy. Toffoli asserts in an unchallenged affidavit that she did not know that the sale of stock would be accomplished by sale of Luxottica ADRs listed on the New York Stock Exchange. Toffoli contends, that in selling her Luxottica securities, she did not purposefully avail herself of the privilege of conducting activities in the United States

and that it would be unfair to require a 65–year–old non-English speaking person to defend insider trading charges arising from a single transaction, initiated in Italy and involving the securities of an Italian company.

The Second Circuit, in *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2d Cir.1972), adopted the formulation set forth in Restatement (Second) of Conflict of Laws section 37 for personal jurisdiction based upon minimum contacts in a federal securities action:

> A state has the power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state makes the exercise of such jurisdiction unreasonable.

468 F.2d at 1341. The Second Circuit further stated that "this is a principle that must be applied with caution, particularly in an international context." *Id.* To establish jurisdiction on this ground, "[t]he person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him." *Id.* In *Leasco*, the Second Circuit found that this stringent requirement was not satisfied where a plaintiff sought to establish personal jurisdiction over a foreign accounting firm on the theory that its reports on a foreign company' shares would be relied upon by anyone (including Americans) interested in purchasing those shares. *Id.* at 1342; *see also Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 1000 (2d Cir. 1975) *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975) ("even assuming ... some causal relation ... the test

for *in personam* jurisdiction is somewhat more demanding").[3]

 In order to find personal jurisdiction under the minimum contacts test, the Court must determine that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). Although courts look to whether it was foreseeable to the defendant that its actions would cause injury in the forum state, the Supreme Court has made clear that foreseeability requires that " 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Id.* at 474, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A defendant must have " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' " *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). *See also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir.1996).

In *Unifund SAL*, the court looked to the facts and circumstances of the insider trading in order to determine whether the defendant should reasonably have anticipated being haled into court where the acts occurred. *See id.*, at 1033. The court found that one circumstance making reasonable such a finding is where the defendant acted in such a way as to have caused consequences in the forum state. *Id.* The court held that, while not every causal connection between an action abroad and ultimate injury to American investors would suffice for purposes of establishing minimum contacts, the circumstances of the defendant's transactions, which involved trading in approximately $2 million in stock and $300,000 in call option contracts of a U.S. corporation listed on the stock exchange, were sufficient. *Id.*

In *S.E.C. v. Euro Security Fund, Coim SA*, No. 98 Civ. 7347, 1999 WL 76801 (S.D.N.Y. Feb.17, 1999), the court found sufficient contacts for purposes of establishing personal jurisdiction over a defendant where the defendant had made trades based on insider information from a foreign company whose stock was registered under the Exchange Act and was traded exclusively on the New York Stock Exchange and because the improper trading exceeded $6 million in a one-month period. The court noted that the trades were "alleged to constitute a significant portion of the daily volume of trading in [the compa-

---

**3.** *See S.E.C. v. Softpoint Inc.*, No. 95 Civ. 2951, 2001 WL 43611 at *5 (S.D.N.Y. Jan.18, 2001) (test for whether a court has personal jurisdiction over a foreign defendant in an action under the securities laws is whether defendant's activities had an "unmistakably foreseeable effect within the United States" and "could reasonably be expected to be visited upon the United States shareholders" (quoting *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir.1990))). In that section 27 of the Exchange Act provides for the service of process on a defendant wherever found, and the jurisdictional reach of this provision is intended to be coextensive with due process under the Fifth Amendment, the Court here looks for evidence that Toffoli knew or should have known that her alleged conduct would have effects in the United States.

ny's] stock on the NYSE." *Euro Security Fund,* at *3. The court determined that "[a]n individual making such substantial purchases should reasonably anticipate being haled into an American court." *Id.*

■ According to Toffoli's uncontested affidavit, she was unaware that the Luxottica shares she had directed her broker to sell more than a month prior to public announcement of the tender offer were traded on the NYSE. The amount of trading by defendant Toffoli (she allegedly avoided losses of $20,250) is far below the amounts found to have been sufficient to support findings of minimum contacts in *Euro Security Fund* and *Unifund SAL.* The Court finds that the circumstances of Toffoli's transactions in Luxottica shares make it unlikely that Toffoli's acts presented "unmistakably foreseeable effect[s] within the United States" that could "reasonably be expected to be visited upon United States shareholders." *S.E.C. v. Softpoint, Inc.,* at *5 (quoting *Unifund,* 910 F.2d at 1028, 1033). The SEC has not established that defendant Toffoli has the requisite minimum contacts with the United States such that this Court may exercise personal jurisdiction over her. Accordingly, defendant Toffoli's motion to dismiss for lack of personal jurisdiction is granted.

Given the above conclusions, the Court need not reach the issue of whether the SEC's claims against defendant Toffoli should be dismissed on forum non conveniens grounds or whether the Complaint should be dismissed as against Toffoli for failure to meet the pleading requirements of Fed.R.Civ.P. 9(b).

### CONCLUSION

For the foregoing reasons, the motions of defendants Adrian Alexander, Susi Belli, David V. Stratman, Pavel Hillel, John R. Rooney, Patrick G. Rooney, Rooney Trad-

ing, Inc. to dismiss the SEC's Complaint on the grounds that it fails to plead fraud with the particularity required of Fed. R.Civ.P. 9(b) are denied. Defendant Gianna Toffoli's motion to dismiss the Complaint as against her for lack of personal jurisdiction is granted.

SO ORDERED.