09-3503-cv
*SEC v. Colonial Inv. Mgmt., et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 17th day of June, two thousand and ten.

PRESENT:

BARRINGTON D. PARKER,
DEBRA ANN LIVINGSTON,
GERARD E. LYNCH,
            *Circuit Judges*.

_____

SECURITIES AND EXCHANGE COMMISSION,

            *Plaintiff-Appellee*,

    v.                                             (09-3503-cv)

COLONIAL INVESTMENT MANAGEMENT LLC,
COLONIAL FUND LLC, and CARY G. BRODY,

            *Defendants-Appellants*.

_____

FOR DEFENDANTS-APPELLANTS:      IRA LEE SORKIN (Bradley M. Brown, Ketevan
                                Kulidzhanova, *on the brief*), Dickstein Shapiro LLP,
                                New York, NY.

1

FOR PLAINTIFF-APPELLEE:    DAVID LISITZA, Senior Counsel, (David M. Becker, Gen. Counsel; Mark D. Cahn, Deputy Gen. Counsel; Jacob H. Stillman, Solicitor; Randall W. Quinn, Asst. Gen. Counsel, *on the brief*), Securities and Exchange Commission, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, *J.*).

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be AFFIRMED.

The Securities and Exchange Commission ("SEC") brought this action against Defendants-Appellants Colonial Investment Management LLC, Colonial Fund LLC, and Cary G. Brody (collectively "Colonial" or "defendants") for engaging in transactions that the SEC alleged violated Rule 105 of Regulation M, 17 C.F.R. § 242.105 (1997) ("Rule 105"), promulgated under the Securities Exchange Act of 1934. Following a six-day bench trial in May 2009, the United States District Court for the Southern District of New York (Castel, *J.*) entered judgment against defendants on July 17, 2009, concluding in a thorough set of findings that defendants had violated Rule 105 in eighteen transactions between 2001 and 2004. The court permanently enjoined defendants from violating Rule 105 in the future and ordered disgorgement of the defendants' profits from the transactions, along with prejudgment interest. Finally, the court imposed a $450,000 civil penalty on Defendant-Appellant Brody individually. Defendants appeal, challenging the judgment of liability as to thirteen of the eighteen transactions at issue. Defendants also challenge the injunctive relief ordered by the district court and the award of prejudgment interest; defendant Brody challenges the imposition of the individual penalty. We assume the parties' familiarity with the remaining facts and procedural history of the case and with the issues presented for review.

2

### 1. Liability

Initially, we reject defendants' contention that the version of Rule 105 promulgated after 2007 was retroactively applied to their conduct. The SEC's complaint charged violations of the version of Rule 105 in place at the time of the challenged transactions, and the district court clearly applied that version of the Rule in its findings. The only question in this appeal with respect to liability is whether there was sufficient evidence to support the district court's conclusion that the defendants violated the version of the Rule in place at the time of their conduct.

*A. General Standards*

In a civil enforcement proceeding, the SEC must prove a violation of the relevant statute or rule by a preponderance of the evidence, *see, e.g.*, *SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994); *SEC v. Enters. Solutions, Inc.*, 142 F. Supp. 2d 561, 573 (S.D.N.Y. 2001), meaning that the SEC in this case had the burden to show that it was "more likely than not" that defendants violated Rule 105, *see United States v. Basciano*, 599 F.3d 184, 202 (2d Cir. 2010). Because the district court's conclusion that the defendants violated Rule 105 is "predominantly . . . factual," we review the court's findings only for clear error. *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 316 n.11 (2d Cir. 2009), *vacated and remanded on other grounds sub nom. Am. Express Co. v. Italian Colors Rest.*, No. 08-1473, 2010 WL 1740528 (U.S. May 3, 2010); *see also SEC v. Cayman Islands Reins. Corp.*, 734 F.2d 118, 119 (2d Cir. 1984) (per curiam). Under this standard, we only review whether the district court's "account of the evidence is plausible in light of the record viewed in its entirety," and we will only reverse a factual determination when we have a "definite and firm conviction that a mistake has been committed," *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (internal quotation marks omitted); this will only take place when a finding is "without adequate support in

the record" or is "against the clear weight of the evidence." *Ezekwo v. N.Y. City Health & Hosps. Corp.*, 940 F.2d 775, 780 (2d Cir. 1991).

Until it was amended in 2007, Rule 105 provided that:

> In connection with an offering of securities for cash pursuant to a registration statement or a notification on Form 1-A . . . filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during . . . [t]he period beginning five business days before the pricing of the offered securities and ending with such pricing . . . .

17 C.F.R. § 242.105 (1997). To "cover a short sale" means to purchase the security that the seller has sold short and return it to the lender of the security. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 96 n.1 (2d Cir. 2007); *see also Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 700 (2d Cir. 1998) ("[T]he [seller] 'covers' the short by buying identical stock and restoring it to the broker-lender."). Thus the SEC had the burden to show that the securities that defendants were allocated in secondary offerings — rather than those the defendants purchased in the open market later in the same day as the offerings — were used to cover the defendants' short position in the stock.

*B. Trades Involving Banc of America Securities (BAS)*

We conclude that the district court did not clearly err in concluding that the two of defendants' trades facilitated by BAS as defendants' prime broker violated Rule 105. The district court was entitled to credit the testimony of Claudia Lewis, a former prime brokerage compliance manager at BAS who reviewed data concerning defendants' trades. Lewis concluded that defendant Colonial Fund LLC instructed BAS to use the shares allocated to defendants in secondary offerings to cover Colonial's short positions in the relevant stock. It was BAS's policy not to cover a short position unless specifically instructed by the customer to do so. The district court was entitled to

disbelieve the testimony of Colonial's "back office personnel" that Colonial gave no such instructions because such orders had to have come from BAS's customers and because these "personnel" could not explain how they knew allocated shares were not used to cover short positions and admitted that they did nothing to prevent it. Lewis also noted that the prices of the securities Colonial used to cover its short positions were identical to the prices at which Colonial purchased allocated shares. Finally, BAS's data confirmed that Colonial used a "first in first out" ("FIFO") liquidation method; the district court did not clearly err in considering the purported evidence to the contrary, on which defendants also rely on appeal, of low probative value. It was also undisputed that Colonial acquired shares from secondary offerings before engaging in open-market transactions in the same stock. Thus the evidence supported the conclusion that defendants "cover[ed] . . . short sale[s] with offered securities" prior to acquiring new securities on the open market. 17 C.F.R. § 242.105 (1997).

   *C. Trades Involving Goldman Sachs Execution and Clearing (GSEC)*

   The district court similarly did not clearly err in concluding that defendants violated Rule 105 on eleven occasions in transactions executed by GSEC. The co-manager of Client Services for GSEC's prime brokerage business David Miller stated in his declaration that

> [a]ll buys and sells of the same security in the same base account would be netted against each other and any existing position *throughout the day* such that the account would have one position . . . in the particular security at the end of the trading day. . . . GSEC's practice was that if a customer had a short position in a particular security in a particular base account and the customer purchased or otherwise acquired shares of that security, those purchases and receipts would be netted against the short position unless the customer gave specific instructions otherwise.

Miller Decl. ¶ 20 (emphasis added). It was undisputed that defendants gave no such "specific instructions," although they could have (but did not) use a specific type of account that would have

prevented GSEC from covering short positions with allocated shares. Finally, Colonial's purchases of the allocated shares were the first purchases of the day, and GSEC used the FIFO method to liquidate Colonial's short positions. This, we conclude, was sufficient evidence taken together to support the district court's findings. The court was entitled to disbelieve defendants' internal records, which, defendants contend, demonstrate that Colonial's short positions were covered by shares purchased in the open market, because these records were inconsistent and sloppy and because there was no evidence that defendants told their brokers that allocated shares should not be used to cover short positions.

2. Remedies

Defendants raise challenges to three of the remedies ordered by the district court: the permanent injunction against future violations of Rule 105, the award of prejudgment interest, and the civil penalty imposed on Brody individually. We review the remedies ordered by the district court for abuse of discretion. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) (injunctive relief); *see also Advance Pharm., Inc. v. United States*, 391 F.3d 377, 398 (2d Cir. 2004) (monetary penalties and injunctive relief).

*A. Permanent Injunction*

A permanent injunction against future violations of the securities laws is warranted where "the defendant's past conduct indicates that there is a reasonable likelihood of further violation in the future." *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978) (alteration and internal quotation marks omitted). A district court may take into account the following factors, among others, in determining whether to issue a permanent injunction:

> the fact that defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether

6

defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*Id.* at 100 (quoting *SEC v. Commonwealth Chem. Sec., Inc.*, 410 F. Supp. 1002, 1020 (S.D.N.Y. 1976)); *see also SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998). Applying these factors, it is clear the district court did not abuse its discretion in permanently enjoining defendants from future violations of Rule 105. The violations at issue here were in no way "isolated"; indeed, defendants *admitted* to seven violations of the Rule and were found liable for eighteen. The pattern of defendants' transactions, which, the district concluded, was intended to mask the defendants' violations of the Rule, supported the court's conclusion that defendants acted with a high degree of scienter. Finally, defendants make no argument here that convinces us the district court clearly erred in concluding that Colonial's internal compliance mechanisms, put in place in 2004, are inadequate to prevent future violations.

### B. Award of Prejudgment Interest

Defendants contend that it was an abuse of discretion for the district court to award prejudgment interest on the amounts it ordered defendants to disgorge because the SEC delayed in bringing the case against them. We rejected an identical argument in *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996). *See First Jersey*, 101 F.3d at 1476-77.

### C. Monetary Penalty on Brody

The district court imposed a "Second tier" monetary penalty on Brody in the amount of $450,000, $25,000 per violation. *See* 15 U.S.C. § 78u(d)(3)(B)(ii) (defining "Second tier" penalties). The Exchange Act provides that the district courts may impose such penalties in amounts determined "in light of the facts and circumstances." *Id.* § 78u(d)(3)(B)(i); *see also SEC v.*

*Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007) (detailing a non-exclusive list of factors district courts may consider in determining whether to impose monetary penalties but emphasizing that "particular facts and circumstances" in each case will bear on the propriety of such penalties). The "facts and circumstances" found by the district court here, including that Brody was Colonial's head trader at the relevant times and was "responsible for all of Colonial's trading and investment decisions," Spec. App'x at 11, demonstrate that there was no abuse of discretion in the district court's award. Moreover, the district court did not abuse its discretion in awarding a "Second tier" penalty as opposed to a lesser one, as the evidence clearly established that Brody engaged in conduct that was, at the very least, in "reckless disregard of [the] regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii).

### 3. Conclusion

We have considered defendants' remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk